WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| ELVIS JOSEPH AMARAME, | ) | No.  CV 10-057-TUC-BPV |
| Petitioner, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| CONRAD M GRABER, | ) | |
| Respondent. | ) | |

Pending before the Court is a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2241 ("Petition"). (Doc. 1)

All parties in this case have consented to proceed, pursuant to 28 U.S.C. § 636(c), before Magistrate Judge Velasco for all proceedings in this case, including trial and entry of final judgment, and to conduct all post-judgment proceedings, with direct review by the Ninth Circuit Court of Appeals if an appeal is filed.

Before the Court is the Petition (Doc. 1) and memorandum (Doc. 2), declaration and exhibits (Doc. 3), Respondent's answer with exhibits (Doc. 10) ("Answer"), and Petitioner's reply (Doc. 14) ("Reply") and affidavits (Doc. 15).

**I.     PROCEDURAL BACKGROUND**

At the time Petitioner, Elvis Joseph Amarame, filed his Petition he was an inmate at the Federal Correctional Institution in Safford, Arizona. (See Doc. 1; Answer, Ex. 1)  At the time of his alleged constitutional deprivation, Amarame was

incarcerated at McRae Correctional Facility ("MCF")[1] in McRae, Georgia. (*Id*.) Amarame is currently serving a 240-month sentence of incarceration for Conspiracy to Possess with Intent to Distribute Heroin at the Adams County Correctional Center in Natchez, Mississippi, and is projected to complete this sentence on November 25, 2011, via Good Conduct Release. (Answer, Ex. 1) Petitioner filed this § 2241 petition contending that he was impermissibly deprived of twenty-seven (27) days of good conduct time ("GCT") after being found guilty by a disciplinary hearing officer ("DHO") of participating in a group demonstration that consisted of boycotting three specific meals served at MCF, in violation of prison regulations. (*See generally* docs. 1 and 2.)

Amarame raises four grounds for relief in his Petition: (1) CCA official's failed to produce and consider videotape evidence requested by Petitioner during disciplinary proceedings; (2) CCA officials harassed and retaliated against Petitioner, refused to hold a Unit Disciplinary Committee ("UDC") hearing as mandated, and barred Petitioner's staff representative from interviewing witnesses; (3) Petitioner's medical documents were ignored in favor of a CCA employed nurse; and (4) Disciplinary Hearing Officer ("DHO") and Special Investigation Supervisors ("SIS") were not certified to seize prison time and were riddled with conflicts of interest. As relief, Petitioner requests restoration of the 27 days of GCT. (Doc. 1 at 9; Doc. 2 at 11)

The Court directed service to be effected on Respondent and instructed Respondent to show cause why Petitioner's writ should not be granted by filing a response within 20 days of the date of service. (Doc. 7) Respondent contends that

---

[1] MCF is a private correctional facility operated by the Corrections Corporation of America ("CCA") under contract with the Bureau of Prisons. (Answer, Ex. 1, ¶ 2)

-2-

Petitioner was afforded all of the due process protections required for a prison discipline hearing. (*See generally* doc. 10)

## II.   DISCIPLINARY CHARGES AND PROCEEDINGS

On January 30, 2009, Petitioner was given notice of being charged with Engaging in a Group Demonstration for allegedly taking part in a group boycott by failing to participate in three meals over the course of two days on January 28 and 29, 2009. (*See* DHO Report (attached to Petition), at 1, 4). The DHO hearing was held on March 18, 2009, and Case Manager Martin Brock was appointed as Amarame's staff representative. (*Id.*)

Amarame responded to the charges with a statement that, because of his medical conditions he has his lunch sent to his unit and a "home boy" cooks his meals in the unit for him. (DHO Report,¶ III.B.) On the morning of January 29, 2009, however, Amarame told [Unit Manager] Jordan of his medical condition and that he was going to pick up his tray. (Id.)

Case Manager Brock contacted three witnesses, and asked them questions on Petitioner's behalf; the witnesses also appeared at the hearing and were asked questions by the DHO. (DHO Report, ¶ C.2.; *Id.*, ¶ v.) Correctional Officer A.H. Wright stated that Amarame was at work in the library when he approached her to inquire if the Kosher meal had been announced. (*Id.*) Because it was past time for the meal, she radioed the kitchen to confirm that Kosher had been announced. (*Id.*) Amarame and other inmates from the library then proceeded to attempt to pick up their trays. (*Id.*) Amarame returned to the library and informed her that they had been too late for the meal. (*Id.*, at 3.)  Officer Wright stated that when they were released late, they would normally not come back stating they were late, but "Staff lets them come back with education at 12:00 noon." (*Id.*)

Case Manager Brock questioned another inmate, Millad Ghattan. (*Id.*, at 2) Case Manager Brock asked Ghattan if he worked at the library on January 29, 2009,

-3-

1 and if he saw Amarame there that day. Ghattan stated that he did, and that he heard
2 Amarame ask Officer Wright if Kosher cards were called, that she didn't know, and
3 then she called them. (*Id.*) Ghattan stated that the Library Officer checked with the
4 dining hall and determined that the Kosher meal had been announced. (*Id.*) Ghattan
5 stated that when they got to the dining hall they were late; they were finished serving.
6 (*Id.*) Ghattan stated that Amarame informed Officer Wright that they were late. (*Id.*)
7 Ghattan also stated that he sits and eats cooked meals together with Amarame
8 regularly, and that another inmate, named Clairmont Melville, cooks for inmate
9 Amarame. (*Id.*) The DHO questioned Ghattan, confirming that Kosher meals are
10 often called late, and that staff normally tells them to come back with the education
11 call at 12:00 noon. (*Id.*, at 3) The DHO asked Ghattan how Amarame eats his meals,
12 and Ghattan stated that Melville brings Amarame his food in the hall and Amarame
13 takes it to the unit. (*Id.*) Ghattan stated that he has not witnessed Amarame eat meals
14 prepared by Melville. (*Id.*) Ghattan stated that Amarame receives the facility served
15 Kosher meals, and takes it to the unit, but does not, as far as he knows, eat the facility
16 served Kosher meals. (*Id.*,3-4) Ghattan stated that he knows Melville cooks for
17 Amarame because that is what Amarame and Melville have told him. (*Id.*)

18 The DHO asked Amarame if he was aware of the boycott of the Kosher meal,
19 and if he had participated in the Kosher meal on January 28 and 29, and he stated
20 "No," that he had not eaten the evening meal on January 28, 2009, and the breakfast
21 and noon meal on January 29, 2009 because he has to cook his high fiber food as
22 ordered by the doctor. (*Id.*, at 3) The DHO considered the documentary evidence
23 including Meal Monitoring Records, which indicated that Amarame had participated
24 in 17 of the 23 meals between the breakfast meal on January 22, 2009 through the
25 noon meal on January 29, 2009. Of the six missed meals, three meals were identified
26 as the target meals of the group demonstration. (*Id.*) Amarame explained that he
27 receives the meals, but does not eat them, and that he did not receive the meals during

28

-4-

the group demonstration because Melville wasn't there, and Amarame doesn't eat the meals. (*Id.*) Amarame stated that on January 29, 2009, he left from the library to pick up his meal, but he was late. (*Id.*) The DHO presented Amarame with a memorandum from Clinical Supervisor Leslie Rugenburg, R.N., indicating she had reviewed Amarame's medical chart and determined that he has no medical condition that would prevent him from participating in the Dietician approved menu. (*Id.*, at 3-4) Amarame indicated that his exhibits were from a doctor. (*Id.*)  Additionally, the DHO considered an interview questionnaire completed by Unit Manager T. Jordan on January 29, 2009, wherein Amarame stated that no one had encouraged him not to participate in the facility provided meals, and that he had been advised that if he continued to participate in the group demonstration by not receiving the noon meal on January 29, 2009, he would receive disciplinary action.

The DHO found the act was committed as charged, basing the finding on:

> [T]he greater weight of the evidence, the reporting officers written statement in section 11 of Incident Report number 1827702 stating, "Inmate Amarame, Elvis was identified as participating in the group demonstration by not participating in the facility served meals of the evening meal on January 28, 2009, breakfast on January 29, 2009 and the noon meal on January 29, 2009." Meal Monitoring Records Review data that indicates between January 22, 2009 breakfast meal through January 29, 2009 noon meal you participated in 17 of the 23 meals out of the 6 meals you did not participate three were the three meals identified as the group demonstration boycott. The fact that you were informed of the group demonstration on January 29, 2009 by Unit Manager T. Jordan and instructed to participate in the noon meal on January 29, 2009. You chose to continue your participation in the group demonstration by not participating in the noon meal on January 29, 2009. The memorandum from Clinical Supervisor Leslie Rugenburg determining that your medical condition would not have prevented you from participating in the facility prepared meals.

(*Id.*, at 4)

The DHO considered Amarame's claim that he was under medical orders to cook high fiber diets, but found that Clinical Supervisor Rugenburg's memorandum clearly indicated that his medical condition did not affect his participation in the facility served meals on the dates indicated in the group demonstration. The DHO

-5-

considered the meal monitoring review data and noted a change in his meal participating during the dates of the group demonstration indicating participation in the group demonstration. (*Id.*) The DHO discredited Amarame's claim that he attempted to participate in the noon meal on January 29, 2009, but was late, finding that, based on Ghattan and Wright's testimony that he could have returned to the dining hall at 12:00 noon with Education call to receive his meal, but chose to continue the group demonstration and not participate in the meal. (*Id.*) The DHO considered his claim that the Incident Report was in retaliation for not signing an affidavit for Special Investigation Supervisors ("SIS") as unfounded, since the incident report was written before his interviews with SIS staff in regard to the incident, and therefore could not be retaliatory. The DHO considered Amarame's documentary evidence insufficient to explain why Amarame did not participate in the evening meal of January 28, 2009 and the breakfast and noon meal of January 29, 2009, other than his participation in the group demonstration. (*Id.*)

Based on this evidence, the DHO found Petitioner guilty of participating in the Group Demonstration and sanctioned him with a loss of 27 days of GCT, disciplinary segregation for thirty (30) days, and a recommendation for disciplinary transfer. (*Id.*) The DHO explained that he had imposed this sanction because such behavior "threatens the safety of all inmates as well as the overall security of the facility. In the past, group demonstrations have led to ser[i]ous damage to facilities as well as ser[i]ous injury to staff and inmates alike, to both people involved and people not involved in the demonstration." (*Id.*) With these facts in mind, the Court turns to the merits of the claims raised in the § 2241 petition.

**III. DISCUSSION**

    A.    <u>Jurisdiction</u>

A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. *Brown v.*

-6-

1  *United States*, 610 F.2d 672,677 (9th Cir. 1980). This Court has territorial jurisdiction
2  over the case in question since Petitioner was incarcerated at FCI Safford when he
3  filed his Petition. FCI Safford is within the District of Arizona.

4          B.      Exhaustion of Administrative Remedies

5          Respondent concedes that Petitioner exhausted his administrative remedies
6  regarding the disciplinary action. (Answer, at 3; Ex.1, Attachment 3, Administrative
7  Remedies)

8          C.      Ground One

9          Petitioner argues that the disciplinary procedures violated his due process
10 rights because he was denied the opportunity to present evidence because his request
11 for the hallway videotape taken on January 29, 2009 was denied. (Doc. 1, at 4; Doc.
12 2, at 2-3)

13         Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. §
14 3624. Accordingly, they have a due process interest in the disciplinary proceedings
15 that may take away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974).
16 "Due process in a prison disciplinary hearing is satisfied if the inmate receives written
17 notice of the charges, and a statement of the evidence relied on by the prison officials
18 and the reasons for disciplinary action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th
19 Cir. 1987), *cert. denied*, 487 U.S. 1207 (1988). "The inmate has a limited right to call
20 witnesses and to present documentary evidence when permitting him to do so would
21 not unduly threaten institutional safety and goals." *Id.* Once these *Wolff* procedural
22 protections are followed, the only function of a federal court is to review the statement
23 of evidence upon which the committee relied in making its findings to determine if
24 the decision is supported by "some evidence." *Superintendent. Mass. Corr. Inst. v.*
25 *Hill*, 472 U.S. 445, 455 (1984) ("The requirements of due process are satisfied if some
26 evidence supports the decision by the prison disciplinary board.") Respondent
27 addressed the "some evidence" requirement, asserting that the decision by the
28

1 disciplinary board was supported by some evidence. Amarame, however, raises
2 procedural due process issues which were not addressed by Respondent. This Court
3 is obligated to reach the merits of Amarame's claims.

4       Petitioner's exhibits demonstrate that he requested the "Hallway camera firm
5 record from the law library to the cafeteria on 1-29-09" and additionally requested a
6 statement of whether or not the DHO possessed the record. (Doc. 3-1, at 13.) The
7 DHO did not consider the videotape evidence, nor is there evidence before the Court
8 that he considered the request. (*See generally* DHO Report) In response to Petitioner's
9 administrative appeal asserting that the DHO did not produce the requested hallway
10 video to check the time Amarame got to the closed cafeteria, Administrator James
11 Burrell responded to Petitioner's claim - that a hallway video could prove Petitioner
12 went to eat on January 29, 2009 but the cafeteria was closed - by stating, non-
13 responsively, that "no video evidence was considered by the DHO in this case."
14 (Answer, Ex. 1, Attachment 3) Respondent has neither addressed nor disputed
15 Petitioner's assertion that there is videotaped evidence in the custody of MCF which
16 would show that Petitioner belatedly attempted to pick up the noon Kosher meal on
17 January 29, 2009.

18       Amarame has a due process right to "present documentary evidence in his
19 defense when permitting him to do so will not be unduly hazardous to institutional
20 safety or correctional goals." *Wolff*, 418 U.S. at 566. Prison officials have the
21 necessary discretion to structure the hearing to keep it within reasonable limits by
22 limiting an inmates ability to compile documentary evidence. *See Id.* At the same
23 time, however, the Supreme Court has refused to establish an "across-the-board"
24 policy imposing a duty on a disciplinary board to explain why inmates were not
25 allowed to present witnesses or evidence. *See Wolff, supra*; *Ponte v. Real*, 471 U.S.
26 491, 496 (1985). Nonetheless, if denied the right to present documentary evidence,
27 due process requires prison officials to provide an explanation, either in the

28

1    administrative record or in court. *Ponte*, 471 U.S. at 497. The MCF has not offered
2    any reason for denying Petitioner access to the videotape, nor has Respondent even
3    addressed Amarame's argument. Because Respondent has not addressed this issue,
4    Respondent has not asserted any penological justification for denying this
5    presentation of the evidence. *See Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

6    Neither does the Court find that the videotape evidence would be irrelevant.
7    The DHO based his findings on the fact that Petitioner was informed of the group
8    demonstration on January 29, 2009 by Petitioner's unit manager and instructed to
9    participate in the noon meal on January 29, 2009, yet "chose to continue [his]
10   participation in the group demonstration by not participating in the noon meal on
11   January 29, 2009." (DHO Report, ¶ V.) Yet, the undisputed testimony of Officer
12   Wright, Inmate Ghattan, and Petitioner is that Petitioner was not called out from the
13   library to participate in the noon Kosher meal. The DHO stated that he discredited
14   Petitioner's statements that he attempted to participate in the noon meal because he
15   could have returned to the dining hall at 12:00 noon with Education to receive his
16   meal, but there is no evidence in the DHO's report that establishes what time
17   Petitioner approached Officer Wright, what time he was informed he had missed
18   Kosher meal, what time he left the law library, and what time he returned after finding
19   the cafeteria closed. The requested videotape evidence would presumably establish
20   this timeline, and is thus relevant to the inquiry. Absent this timeline, the statements
21   from Officer Wright and Inmate Ghattan that "normally" Petitioner could go back
22   with the education call when they missed Kosher lunch does not establish "some
23   evidence" of what happened on January 29, 2009.

24   Accordingly, Petitioner's uncontested allegations, and facially plausible
25   assertion demonstrating Petitioner's request for evidence relevant to the determination
26   of a material issue which was denied without explanation or sufficient penological
27   justification supports Petitioner's claim of a lack of due process in the disciplinary
28   
-9-

proceedings. Respondent will be ordered to expunge the disciplinary ruling and restore Amarame's 27 days of good time credit or hold a new disciplinary hearing at which the videotape evidence will be produced and considered. *See Downey v. Crabtree*, 100 F.3d 662, 671 (9th Cir. 1996) (noting that ordinary procedure is to remand to BOP for its reconsideration).

### D. Ground Two

Petitioner argues in Ground Two that CCA officials imposed punishment before the UDC and DHO hearings, engaged in psychological warfare at solitary confinement, retaliated against Petitioner, refused to hold UDC hearings as mandated in the rules, and barred Petitioner's staff representative from speaking or interviewing the witnesses. Respondent does not address this specific claim. It is, however, without merit.

A prisoner who wishes to challenge the manner, location, or conditions of a sentence's execution must bring a petition pursuant to § 2241 in the custodial court. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir.2000). Petitioner argues, in Ground Two of his Petition, that CCA officials engaged in "psychological warfare and retaliated against Petitioner before the hearings" and he was placed in solitary confinement and taunted by security officers at MCF. Ordinarily, this Court would exercise its discretion to construe a habeas petition which attacks the conditions of confinement as a civil rights action pursuant to 42 U.S.C. § 1983. *See Hansen v. May*, 502 F.2d 728, 279-30 (9th Cir. 1974)(a *pro se* litigant whose habeas petition challenges conditions of confinement is "entitled to have his action treated as a claim for relief under the Civil Rights Act"). However, because the substance of Petitioner's claim, including much of Ground Two of the Petition, is that he was wrongfully deprived of twenty-seven days of good time credit, and because he seeks the restoration of this time, the Court will decline to construe any portion of the petition as a claim for relief under 42 U.S.C. § 1983.

Should Petitioner wish to pursue the retaliation claims, or claims challenging his conditions of confinement, he must do so by way of a civil rights complaint pursuant to 42 U.S.C. § 1983. The Clerk will be directed to send an appropriate form complaint to Petitioner.

As to Petitioner's claim that the disciplinary procedures violated his due process rights because the UDC hearing was unlawfully delayed, his argument fails. Program Statement ("P.S.") 5270.07[2] provides that an inmate charged with a disciplinary infraction is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time the staff became aware of the inmate's involvement in the incident. P.S. Ch.6, § 1. The UDC may extend the time limits imposed in this section for good cause shown by the inmate or staff and documented in the record of the hearing. (*Id*. § 1(k)) The UDC is to ensure that the inmate is advised of the delay, including., where appropriate, the reasons for the delay. (*Id*.) Additionally, the Warden's approval is required for any extension beyond five work days. (*Id*.) When an extension is approved, the inmate is to be provided with a written explanation for the extension, and a copy of the reason is to be made a part of the UDC record. (*Id*.)

Here, the DHO indicates that the UDC hearing was delayed pending the completion of an SIS investigation. Upon the completion of the investigation Petitioner was advised of the delay and provided a copy of the UDC delay notice. (*See* DHO Report, ¶ V; Advisement of Delay(s).)  Administrator Burrell responded to Petitioner's appeal that the reason for the delay was due to the number of inmates involved in the incident. (Answer, Ex. 1, Attachment 3)

---

[2] BOP program statements are available at BOP's website: www.bop.gov

-11-

Notably, even in cases such as this one, where the UDC Hearing has not been timely held, a violation of a Bureau of Prisons regulation does not rise to a due process violation. Indeed, due process does not impose a requirement that an initial hearing be held within three days of the staff becoming aware of an incident. As noted above, the Supreme Court held that the Constitution requires compliance with minimal federal due process standards and explained that these minimal requirements are: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. *Wolff*, 418 U.S. at 563-67. As these requirements were met in this case, Petitioner's dissatisfaction with the delay that occurred between the suspected boycott and his disciplinary hearing do not implicate due process concerns. Moreover, the relevant inquiry is not "whether the prison complied with its own regulations," but whether Plaintiff was "provided with process sufficient to meet the *Wolff* standard." *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir.1994), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

As to Petitioner's claim that the DHO barred Petitioner's staff representative from speaking or interviewing petitioner's witnesses, including staff witnesses, before the DHO hearing, there is no support in the record for Petitioner's claim. Administrator Burrell addressed this claim in Petitioner's grievance and noted that "the DHO report contains statements from your witnesses responding to questions submitted by you to your staff representative. By policy, only the DHO can ask questions during the hearing; therefore, these statements are an indication that our staff representative 'interviewed' your witnesses prior to the hearing." (Answer, Ex. 1, Attachment 3; see also DHO Report, at ¶¶ II.E., and III. C.2.)

Accordingly, the Court finds that Petitioner's claim in Ground Two that he was deprived of procedural due process is without merit and fails to provide a basis for relief.

### E.  Ground Three

Petitioner argues, in Ground Three of the Petition, that medical documents require Petitioner to eat only a high fiber diet and that "Petitioner's medical documents from licensed and practicing [doctors], were ignored in preference for CCA employed Nurse Leslie Rugenberg" in violation of the due process clause and the Eighth Amendment. Respondent does not address this specific claim. It is, however, without merit.

The DHO report indicates that Amarame submitted three handwritten statements and 9 exhibits. (*See* DHO Report, ¶ III.D.) There is no evidence that Amarame submitted any evidence from either Dr. Irfan or Dr. Gonzalez to the DHO. (*See Id.*) Amarame has submitted no evidence from either doctor to this Court. The DHO considered Nurse Rugenberg's statement that she had reviewed the medical chart and determined that he had no medical condition that would prevent him from participating in the dietician approved menu. (*See Id.*) Furthermore, even if Petitioner had submitted such evidence, Petitioner is not challenging the procedures of the disciplinary hearing in Ground Three, only the conclusion reached by the DHO. Such a decision must be based on "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56. If so, then due process is satisfied. *Id*. The court need not examine the entire record, independently assess the credibility of the witnesses, or weigh the evidence. *Id*. at 455.

There is "some evidence," specifically Nurse Rugenberg's testimony, that supports the DHO's conclusion finding that Petitioner had no medical condition that

-13-

would prevent him from participating in the facility approved meals. Accordingly, there is no due process violation.

### F. Ground Four

Petitioner argues, in Ground Four, that DHO Carey was not properly certified to seize prison time, and that both DHO R. Troy Carey and SIS Darryl Goodner were "riddled with conflicts of interest."

To the extent Petitioner is again raising a retaliation or harassment claim regarding SIS Goodner, Petitioner is referred to this Court's discussion in Ground Two regarding habeas corpus petitions pursuant to 28 U.S.C. § 2241 as an inappropriate vehicle to bring claims challenging conditions of confinement.

Regarding Petitioner's argument that DHO Carey was not properly certified, or was not impartial, Respondents oppose the argument, submitting that DHO Carey was not involved in the investigation of the group demonstration, and thus was an impartial decision-maker under the definition set forth in *Wolff*, *supra*. Indeed, an inmate is entitled to have a charge against him determined by an impartial decisionmaker. *Wolff*, 418 U.S. at 563-72. The record does not reflect that the DHO was in any way involved in the facts giving rise to Petitioner's charge, thus, there is no basis to conclude that the DHO was not impartial.

## IV. CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that Respondent is ordered to expunge the disciplinary ruling and restore Amarame's 27 days of good time credit or hold a new disciplinary hearing within forty-five (45) days at which time the videotape evidence will be produced and considered;

1     IT IS FURTHER ORDERED that Grounds Two, Three, and Four of the
Petition for Writ of Habeas Corpus are DENIED;

    IT IS FURTHER ORDERED that judgment shall enter accordingly;

    The Clerk of Court is DIRECTED to mail Petitioner a court-approved form for filing a civil rights complaint by a prisoner.

    DATED this 29th day of April, 2011.

_____
Bernardo P. Velasco
United States Magistrate Judge